

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| **JEFFREY P. WETZEL,** | ) | |
| | ) | |
| **Appellant,** | ) | |
| | ) | |
| **V.** | ) | **WD87372** |
| | ) | |
| **TREASURER OF MISSOURI** | ) | **OPINION FILED:** |
| **AS CUSTODIAN** | ) | **APRIL 8, 2025** |
| **OF SECOND INJURY FUND,** | ) | |
| | ) | |
| **Respondent.** | ) | |

### Appeal from the Labor and Industrial Relations Commission

Before Division Four:  Anthony Rex Gabbert, Chief Judge, Presiding, Cynthia L. Martin, Judge and Edward R. Ardini, Jr., Judge

Jeffrey P. Wetzel ("Wetzel") appeals from the Labor and Industrial Relations Commission's ("Commission") final award denying his claim for workers' compensation benefits from the Second Injury Fund.  Wetzel asserts that the denial of benefits was erroneous because, contrary to the Commission's finding, the record included authoritative medical documentation that demonstrated Wetzel had a preexisting permanent partial disability to his low back.  Because the record included medical documentation of Wetzel's preexisting disability, and because the Commission erroneously concluded that the physician who rated Wetzel's preexisting disability had to

have reviewed the medical documentation of Wetzel's preexisting disability, we reverse and remand with instructions.

## Factual and Procedural Background[1]

After his graduation from high school in 1979, Wetzel began his career as an ironworker. On March 23, 2018, Wetzel was employed by GM Johnson Companies, d/b/a St. Louis Bridge Construction Company ("Employer"), and was working at a manufacturing facility in Carroll County, Missouri. Wetzel was working on a crew whose responsibility was to receive incoming materials, unload those materials from trucks using machinery and chains, and then stack the materials in a storage area to be used later. While unloading the final truck of the day, a beam weighing approximately 5,000 pounds rolled over onto Wetzel's lower legs causing crush injuries including an open fracture to his right tibia and fibula and a closed fracture to his left tibia and fibula. Wetzel underwent several surgeries to repair the fractures and stayed at a rehabilitation facility, where he relearned to walk. Wetzel never returned to work.

On May 17, 2018, Wetzel filed a workers' compensation claim against Employer and against the Second Injury Fund ("Claim") with the Division of Worker's Compensation ("the Division"). The Claim sought permanent and total disability benefits related to his March 23, 2018 injury. Wetzel and Employer entered a compromise

---

[1]"In reviewing the Commission's decision, we view the evidence objectively and not in the light most favorable to the decision of the Commission." *Schebaum v. Treasurer of State-Custodian of Second Injury Fund*, 645 S.W.3d 622, 623 n.1 (Mo. App. W.D. 2022) (quoting *Dubuc v. Treasurer of State-Custodian of Second Injury Fund*, 597 S.W.3d 372, 374 n.2 (Mo. App. W.D. 2020)).

2

settlement on August 8, 2022, in which Employer agreed to pay Wetzel $55,000, representing 33.5 percent permanent partial disability to his left and right lower legs at the 160-week level ("primary injury").

An administrative law judge ("ALJ") conducted a hearing on Wetzel's Claim for relief from the Second Injury Fund on April 13, 2023. Wetzel and the Second Injury Fund stipulated to the following at the outset of the hearing: (1) Wetzel had an average weekly wage resulting in a compensation rate of $923.01 for temporary total disability and resulting in $483.48 for permanent partial disability compensation; (2) Employer paid Wetzel temporary total disability compensation totaling $27,690.47; (3) Employer provided Wetzel medical care totaling $413,437.16; (4) Wetzel settled his primary claim, as stated *supra*; and (5) Wetzel reached maximum medical improvement on February 15, 2019. Wetzel and the Second Injury Fund agreed that the only issue to be determined is "whether the Second Injury Fund has any liability for disability compensation."

During the ALJ hearing, Wetzel testified about a preexisting disability to his lower back. Wetzel testified that, in 1989, he was working on an overpass in St. Louis when he lost his footing and fell approximately forty-five feet to the ground. Wetzel testified that he suffered compression factures to his spine at L1, L2, and L3. Following the 1989 accident, Wetzel filed a workers' compensation claim against his then-employer, and ultimately entered a compromise settlement for 17.5 percent permanent partial disability to his body as a whole referable to the lower back. A copy of this Workers' Compensation Stipulation for Compromise Settlement was admitted into evidence without objection as Exhibit 7.

Wetzel testified that he continued to suffer pain in his low back throughout his career as an ironworker, and explained that the low back pain resulted in diminished physical capabilities as he aged. Wetzel testified that he visited an orthopedics practice in September and October 2017 to seek treatment for his low back pain. These visits pre-dated Wetzel's primary injury by several months.

Wetzel admitted the medical records from his September and October 2017 orthopedic visits into evidence as Exhibit 14 during the ALJ hearing. The Second Injury Fund's objection to admission of Exhibit 14 was overruled by the ALJ. Exhibit 14 included a summary of Wetzel's description of his 1989 low back workplace injury, the reported lingering effects of that injury, and the treatment Wetzel reported receiving since sustaining the injury. Exhibit 14 also included independent medical findings, following a physical examination, x-rays, and MRI imaging, that Wetzel was suffering from: (1) chronic vertebral compression fractures at L1, L2, and L3; (2) moderate degenerative disc disease at L3 and L4; and (3) mild rotary lumbar dextroscoliosis with mild retrolisthesis at L2 and L3. The physician's assistant who examined Wetzel in September and October 2017 recommended physical therapy directed at lumbar stabilization, and a nonsteroidal anti-inflammatory for pain.

Wetzel's medical records related to his March 23, 2018 primary injury were also admitted into evidence during the ALJ hearing. In addition, the ALJ received deposition testimony from a doctor ("Doctor") who conducted a medical evaluation of Wetzel after the primary injury, along with the Doctor's written report dated November 2, 2020.

4

Before addressing Wetzel's preexisting disabilities, the Doctor's report included the following disclaimer:

> The understanding of his pre-existing medical conditions came from a detailed history from . . . Wetzel and discussion of each body part which had surgery. I advised him to notify his attorney to sequester records to be reviewed, so I can confirm the discussion below.

Doctor's report then described Wetzel's self-reported 1989 low back injury and the lingering effects thereof before concluding that the low back injury constituted a 25 percent permanent partial disability of Wetzel's body as a whole. Doctor's report also mentioned preexisting injuries to Wetzel's knees, right shoulder, and right wrist.[2] Doctor's report ultimately concluded that "Wetzel is permanently and totally disabled as a direct result of his work-related injury of 3/23/2018 in combination with his pre[]existing medical conditions." When asked during his August 4, 2022 deposition whether he reviewed any medical records predating Wetzel's March 23, 2018 injury, Doctor answered that he did not. However, Doctor testified that although he did not have prior medical documentation to confirm Wetzel's self-reported preexisting disability to his low back as a result of the 1989 workplace accident, he was not disadvantaged by the lack of that documentation in rating the self-reported disability because he had seen such injuries in the past and had sufficient experience to rate the disability based on Wetzel's reports and subjective complaints, and on Doctor's physical examination of Wetzel.

---

[2]The only preexisting disability that remains at issue in this appeal is Wetzel's preexisting low back disability.

A vocational expert who evaluated Wetzel concluded that Wetzel was permanently and totally disabled when considering the preexisting injury to the lumbar spine rated at 25 percent permanent partial disability to the body as a whole (400-week level) in combination with the disability for the March 23, 2018 primary injury. The vocational expert did not rely on any other self-reported preexisting disabilities to reach this conclusion.

The ALJ issued a final award ("ALJ Final Award") on August 15, 2023. The ALJ Final Award concluded that Wetzel is permanently and totally disabled, and then considered the Second Injury Fund's liability. The ALJ Final Award found that "[w]hile it might be argued that some of [Wetzel's] pre-existing disabilities . . . are not qualifying, it is undisputed that his low back injury of 1989 is a qualified pre-existing injury." The ALJ Final Award noted that Wetzel's workers' compensation claim for the 1989 injury "settled for 17.5% disability at the time," and that "by the time [Wetzel] was evaluated by [Doctor] in 2020, that disability was deemed to be 25%." The ALJ Final Award noted that the vocational expert concluded that Wetzel was permanently and totally disabled when considering the preexisting injury to the lumbar spine rated at 25 percent permanent partial disability to the body as a whole (400-week level) in combination with the permanent partial disability for the March 23, 2018 primary injury. The ALJ Final Award then concluded that "the evidence is clear that the combination of the low back injury alone with the primary injury has caused [Wetzel] to be permanently and totally disabled." As such, the ALJ Final Award concluded that the Second Injury Fund is liable for all benefits resulting from Wetzel's permanent and total disability.

6

The Second Injury Fund sought review of the ALJ Final Award by the Commission on seven grounds. Grounds 3, 4, 5, and 6 in the application for review challenged findings relating to preexisting disabilities to Wetzel's knees, right shoulder, and right wrist. However, the ALJ Final Award found that Wetzel's preexisting disabilities to his knees, right shoulder, and right wrist "are unnecessary to determine Second Injury Fund liability given that the pre-existing disability of the low back is clearly qualifying under [section] 287.020," and combined with the primary injury to render Wetzel permanently and totally disabled. As such, the Commission did not address any preexisting disability other than Wetzel's low back injury, and grounds 3, 4, 5, and 6 in the Second Injury Fund's application for review are immaterial to our analysis on appellate review.

Grounds 1 and 2 in the Second Injury Fund's application for review challenged the admission of exhibits 8, 9, 10, 11, and 14 into evidence. Ground 7 challenged the ALJ's finding that Wetzel "has a qualifying preexisting injury to his low back" because exhibits 8, 9, 10, 11, and 14 were erroneously admitted, and without the erroneously admitted exhibits, Doctor's testimony, which included no review of medical records predating the 2018 primary injury, could not constitute "independently verifiable evidence of an alleged medically documented preexisting injury to the low back." The Second Injury Fund also asserted that there was "no properly admitted evidence to independently verify that . . . Wetzel's back pain worsened over time."

On July 16, 2024, the Commission issued its final award denying compensation ("Final Award"). The Final Award did not find that any of the exhibits about which the

7

Second Injury Fund complained were improperly admitted. The Commission

nonetheless reversed the ALJ Final Award. The Commission's Final Award, relying on

*Dubuc v. Treasurer of State-Custodian of Second Injury Fund*, 659 S.W.3d 596 (Mo.

banc 2023), concluded that Wetzel's "self-reported history communicated to doctors to

support [the] low back disability related to his 1989 prior work injury" did not establish

that Wetzel's low lack disability was "medically documented" so as to qualify as a

preexisting disability that would render the Second Injury Fund liable. In effect, the

Commission agreed with the Second Injury Fund's assertion in ground 7 of its application

for review that Doctor's testimony, which included no review of medical records

predating the 2018 primary injury, could not constitute "independently verifiable

evidence of an alleged medically documented preexisting injury to the low back."

Wetzel appeals.

**Standard of Review**

Article V, section 18 of the Missouri Constitution allows for judicial review of an

award issued by the Commission to determine whether it is authorized by law and to

determine whether it is "supported by competent and substantial evidence upon the whole

record." Section 287.495.1[3] details judicial review of an award by the Commission:

> The court, on appeal, shall review only questions of law and may modify,
> reverse, remand for rehearing, or set aside the award upon any of the
> following grounds and no other:
>
> (1) That the commission acted without or in excess of its powers;

---

[3]All statutory references are to RSMo 2016 as supplemented through March 23, 2018, unless otherwise indicated.

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

To the extent that the Commission's decision interprets and applies the law, we review the decision *de novo*. *Fernandez v. Smithfield Foods, Inc.*, 689 S.W.3d 499, 507 (Mo. App. W.D. 2024). To the extent we are reviewing whether the Commission's award is supported by competent and substantial evidence, "we consider the record as a whole, viewing it objectively and not in the light most favorable to the award." *Id.* If, however, the Commission makes findings regarding the weight it gave to the evidence or the credibility of the evidence, we defer to those findings. *Id.*

**Analysis**

In a single point on appeal, Wetzel argues that, contrary to the Commission's finding in the Final Award, the Commission had before it authoritative medical documentation that Wetzel suffered a preexisting permanent partial disability to Wetzel's low back. Wetzel claims that Exhibit 14 "contains much more than 'unsupported statements' of preexisting disability" in that it "provides clear and undisputed evidence of [Wetzel's] preexisting back injury, including diagnosis and treatment of the same."[4] We

---

[4]The Second Injury Fund argues on appeal that Wetzel's challenge to the Commission's Final Award must fail because he failed to challenge the Final Award as unsupported by substantial and competent evidence using the necessary framework, as set forth in *Brune v. Johnson Controls*, 457 S.W.3d 372 (Mo. App. E.D. 2015). The framework requires the appellant to do the following to challenge the factual findings of the Commission:

agree. To explain our conclusion, we address the statutory requirements for establishing Second Injury Fund liability for permanent total disability, and in particular, the requirement that a preexisting disability be "medically documented," the only statutory requirement challenged by the Second Injury Fund in its application for review from the ALJ's Final Award, and thus the only statutory requirement addressed in the Commission's Final Award.

"The General Assembly created the Second Injury Fund in an effort to encourage the employment of individuals who are already disabled from a preexisting injury, regardless of the type or cause of that injury." *Schebaum v. Treasurer of State-Custodian of Second Injury Fund*, 645 S.W.3d 622, 627 (Mo. App. W.D. 2022) (quoting *Dubuc v. Treasurer of State-Custodian of Second Injury Fund*, 597 S.W.3d 372, 377 (Mo. App. W.D. 2020)). Section 287.220, which creates the Second Injury Fund, "ensures that an employer is only liable for the disability caused by the work injury" while also setting parameters for the Second Injury Fund's liability. *Id.* (quoting *Dubuc*, 597 S.W.3d at 377). Based on statutory amendments applicable to workplace injuries occurring after

---

(1) marshal all record evidence favorable to the award; (2) marshal all unfavorable evidence, subject to the Commission's explicit or implicit credibility determinations; and (3) show in the context of the whole record how the unfavorable evidence so overwhelms the favorable evidence and its reasonable inferences that the award is, in context, not supported by competent and substantial evidence.

*Id.* at 377. While Wetzel's brief does not strictly follow this framework, the brief acknowledges that the evidence included his self-reported complaints about his low back, included a discussion of Exhibit 14, and demonstrates why Exhibit 14 constituted overwhelming evidence of a medically documented preexisting disability. As such, we review Wetzel's point on appeal.

10

January 1, 2014, the Second Injury Fund's liability is now statutorily limited to claims for permanent total disability ("PTD"), and even then, only if the claimant sustains his or her burden to establish the statutory conditions described in section 287.220.3.

"Under subsection 3, employees now must meet two conditions to make a compensable PTD claim" against the Second Injury Fund. *Treasurer of State-Custodian of Second Injury Fund v. Parker*, 622 S.W.3d 178, 181 (Mo. banc 2021). "First, the employee must have *at least* one qualifying preexisting disability." *Id.* (citing section 287.220.3(2)(a)a. "Second, the employee must show he 'thereafter sustains a subsequent compensable work-related injury that, when combined with the preexisting disability . . . results in a permanent total disability.'" *Id.* (quoting section 287.220.3(2)(a)b). "The 'subsequent compensable work-related injury' is often referred to as the 'primary injury.'" *Id.*

Here, there is no dispute that *if* Wetzel met his burden to establish the first condition (that the low back disability he suffered in 1989 was a *qualifying* preexisting disability), then substantial and competent evidence on the record as a whole established the second condition (that Wetzel suffered PTD as a result of the combination of his primary workplace injury with the qualifying preexisting disability to his low back). We focus our attention, therefore, on whether Wetzel sustained his burden to establish the first condition, which itself has several independent requirements, only one of which is at issue in this case.

Proof of the first condition requires the claimant to establish the following:

11

[T]he preexisting disability must be medically documented, equal at least 50 weeks of permanent partial disability, and meet one of the following criteria:

"(i) A direct result of active military duty in any branch of the United States Armed Forces; or

(ii) A direct result of a compensable injury as defined in section 287.020; or

(iii) Not a compensable injury, but such preexisting disability directly and significantly aggravates or accelerates the subsequent work-related injury and shall not include unrelated preexisting injuries or conditions that do not aggravate or accelerate the subsequent work-related injury; or

(iv) A preexisting permanent partial disability of an extremity, loss of eyesight in one eye, or loss of hearing in one ear, when there is a subsequent compensable work-related injury as set forth in subparagraph b of the opposite extremity, loss of eyesight in the other eye, or loss of hearing in the other ear."

*Parker*, 622 S.W.3d at 181 (quoting section 287.220.3(2)(a)a(i)-(iv)).  Section

287.220.3(2)(a)a thus describes three distinct requirements for a preexisting disability to

be a "qualifying" disability:

[T]he preexisting disability must be medically documented [("the first requirement")], equal at least 50 weeks of permanent partial disability[5] [("the second requirement")], and meet one of the [four criteria described in section 287.220.3(2)(a)a(1)-(iv)] [("the third requirement")].

*Phelps v. Treasurer of State-Custodian of Second Injury Fund*, 629 S.W.3d 47, 51 (Mo

.App. S.D. 2021) (quoting *Parker*, 622 S.W.3d at 181).

Here, the only the Second Injury Fund challenges, and the only requirement the

Commission's Final Award addresses, is the first requirement--whether Wetzel's

---

[5]Section 287.190 addresses the calculation of permanent partial disability benefits. A partial disability is determined using a calculation in which 400 weeks constitutes total disability.  Fifty weeks of permanent partial disability compensation is 12.5 percent of 400 weeks.

12

preexisting low back disability was "medically documented." The Second Injury Fund argued in ground 7 of its application for review that it was not because: (i) exhibits 8, 9, 10, 11, and 14 were erroneously admitted by the ALJ (which the Commission did not find), and (ii) Doctor (who awarded Wetzel's low back disability suffered in 1989 a 25 percent permanent partial disability rating) did not review any medical records predating Wetzel's primary injury and relied only on Wetzel's self-report of the low back injury to determine a disability rating (a position with which the Commission agreed).

Our Supreme Court addressed the meaning of "medically documented," as used in section 287.220.3(2)(a)a, in *Dubuc v. Treasurer of State-Custodian of Second Injury Fund*, 659 S.W.3d 596 (Mo. banc 2023). In *Dubuc*, the workers' compensation claimant suffered a primary injury when he fell off a ladder at work, resulting in injuries to his wrist, kidneys, and low back. *Id.* at 599. The claimant settled his primary claim with his employer and filed a claim for benefits against the Second Injury Fund, alleging that he had preexisting injuries, including multiple hernias, that rendered him permanently and totally disabled when combined with the injuries he suffered from falling off the ladder. *Id.* The ***only*** evidence in the record regarding the preexisting hernias was claimant's "self-reported history . . . communicated to doctors." *Id.* at 604. The Court was required to address whether a claimant's self-reports of preexisting disabilities recorded in medical records are sufficient to satisfy the requirement that a preexisting disability is "medically documented."

Recognizing that "medically documented" is not defined in the workers' compensation statute, and mindful that amendments to the Workers' Compensation Law

13

effective January 1, 2014, "sought to limit Fund liability," the Court relied on the dictionary definitions of "documented" and "medically" to determine the General Assembly's intent. *Id.* at 603-04.

> [T]he "documented" requirement should be interpreted to mean that something more than unsupported statements of a preexisting disability are necessary. Rather, a claimant must provide authoritative support of a preexisting disability. Further . . . not only must the preexisting disabilities be documented, they must be *medically* documented. . . . [T]he provided authoritative support for a preexisting disability must be authoritative *in the medical field*.

*Id.* at 604. The Court thus concluded that Dubuc's "own statements about his hernias, albeit recorded by doctors in medical records, ***do not conclusively support that any doctor has medically documented***" the claimant's preexisting condition. *Id.* (emphasis added). The Court thus concluded that "Dubuc's self-reported history of his hernias was insufficient to establish a 'medically documented' preexisting disability under section 287.220.3." *Id.*

The Commission found *Dubuc* to be controlling. In doing so, the Commission held:

> We note that here, as in *Dubuc*, the employee relies on self-reported history communicated to doctors to support low back disability related to his 1989 prior work injury. Although [Doctor's] deposition testimony suggested that the absence of medical records associated with this injury did not disadvantage him in arriving at a disability rating relating to the employee's 1989 injury based on a physical examination alone, this testimony is compromised by [Doctor's] explicit acknowledgment in his November 2, 2020 IME of the need for medical records relating to the employee's prior health conditions to confirm the employee's account of events.

The Commission thus expressly disagreed with the ALJ's conclusion that "it is undisputed that [Wetzel's] low back injury of 1989 is a qualified pre-existing injury."

14

And, the Commission denied Wetzel's claim against the Second Injury Fund "because the competent and substantial evidence in the record fails to persuade us that the employee's work injury on January 20, 1989, resulted in *medically documented* preexisting [permanent partial disability] consistent with the criteria set forth under [section] 287.220.3 . . . as construed by the Supreme Court in *Dubuc* . . . ."

Though the Commission generally held, as noted above, that Wetzel relied on "self-reported history communicated to doctors" to support low back disability related to his 1989 prior work injury, the only "doctor" thereafter discussed by the Commission's Final Award is Doctor, who rated Wetzel's preexisting disability to the low back at 25 percent of the body as a whole. The Commission then reached the legal conclusion that because Doctor did not see Exhibit 14 or any other medical records that predated the primary injury, and instead rated Wetzel's preexisting disability based only on Wetzel's self-report of the disability, Wetzel's preexisting disability to the low back was not medically documented as required by *Dubuc*.

The Commission's conclusion is legally erroneous because it conflates and collapses the proof required to establish two distinct and independent requirements of a qualifying preexisting disability: medical documentation of the disability, and a rating for the disability that exceeds fifty weeks. *See Phelps*, 629 S.W.3d at 51 (quoting *Parker*, 622 S.W.3d at 181) ("[T]he preexisting disability must be medically documented [('the first requirement')], [and] equal at least 50 weeks of permanent partial disability [('the second requirement')] . . . . "). Neither *Dubuc* nor section 287.220.3(2)(a)a require the calculation of a disability rating for a preexisting disability to be reflected in or by the

15

same evidence that constitutes "medical documentation" of the preexisting disability. In fact, three of the four criteria for qualifying preexisting disabilities do not involve compensable workplace injuries where "disability ratings" would be routinely calculated. *See* section 287.220.3(2)(a)a(i), (iii) & (iv). Thus, the medical documentation of a preexisting disability need not (and often will not) reflect a disability rating at all.

Moreover, neither *Dubuc* nor section 287.220.3(2)(a)a prohibit a medical doctor from providing a competent and admissible disability rating for a self-reported preexisting disability without having reviewed medical documentation of the preexisting disability.[6] Instead, so long as the record before the Division or the Commission includes medical documentation of a preexisting disability as required by *Dubuc* and a disability rating for the same preexisting disability equaling a minimum of fifty weeks, it is immaterial that the evidence establishing these independent statutory requirements comes from different sources.

Though Doctor's report did not qualify, and need not have qualified, as medical documentation of Wetzel's preexisting disability of the low back as a result of his 1989

---

[6]Though the weight to be afforded to a disability rating based solely on a self-reported preexisting disability may be subject to cross-examination, as was the case with Doctor's disability rating for Wetzel, the disability rating is nonetheless competent evidence that can independently satisfy the fifty-week requirement in section 287.220.3(2)(a)a, without being required to satisfy the "medical documentation" requirement in section 287.220.3(2)(a)a. Here, for example, though Doctor's report included a caveat that he would need to see Wetzel's prior medical records to confirm the self-reported preexisting low back disability, Doctor did not in any way qualify his ability to rate the preexisting disability as self-reported. This is consistent with Doctor's deposition testimony where Doctor expressed that he was not disadvantaged by the lack of medical documentation confirming the preexisting disability in rating the preexisting disability as self-reported.

16

workplace injury, it nonetheless qualified as evidence that Wetzel's preexisting low back disability satisfied the fifty-week threshold.  And, other evidence in the record did satisfy the medical documentation requirement, but was ignored by the Commission as the natural byproduct of the Commission's erroneous application of *Dubuc*.

Wetzel argues that Exhibit 14 "contains much more than 'unsupported statements' of preexisting disability" in that it "provides clear and undisputed evidence of [Wetzel's] preexisting back injury, including diagnosis and treatment of the same."  We agree.  More importantly, the Commission's findings are consistent with Wetzel's contention.

The Commission found that "Exhibit 14 included records from [Wetzel's] September 14, 2018 new patient visit with certified physician assistant [T.S.] at Washington University in St. Louis Physicians.  ***These records documented [Wetzel's] report of an approximately twenty-eight-year-old back injury that involved falling from a forty-five-foot bridge***."[7]  (Emphasis added.)  In fact, Exhibit 14 documented this injury based not only on Wetzel's self-report, but also on independent medical verification of vertebral compression fractures at L1, L2, and L3 following a physical examination and diagnostic imaging.  Exhibit 14 clearly qualifies as medical documentation of Wetzel's preexisting low back disability.[8]  The Commission ignored Exhibit 14 because it

---

[7]The Commission's Final Award mistakenly stated that the records in Exhibit 14 were from a "September 2018" new patient visit, though the records themselves plainly reflect that Wetzel first visited the orthopedic group in September 2017.  At best, the Commission's reference to September 2018 is a scrivener's error that we disregard.  At worst, it is a factual finding that is not supported by competent and substantial evidence.

[8]We find it significant that although the Second Injury Fund has consistently challenged the admissibility of Exhibit 14, it has never taken the position that Exhibit 14

17

erroneously applied *Dubuc* to require either that the medical documentation of a preexisting disability include a disability rating that satisfies the fifty-week requirement, or that the doctor rating a preexisting disability does so in reliance on medical documentation verifying the preexisting disability. Because the Commission erroneously ignored Exhibit 14, its conclusion that Wetzel's preexisting disability was not medically documented is unsupported by competent and substantial evidence on the record as a whole.[9]

For the reasons explained, the Commission erroneously concluded that Wetzel's preexisting low back disability following a 1989 workplace injury was not medically documented.[10] As this was the only statutory requirement for establishing a qualifying

---

(if properly admitted) fails to qualify as medical documentation of Wetzel's preexisting low back disability.

[9]The Second Injury Fund has never argued, and the Commission did not hold, that *Dubuc* requires the medical documentation of a preexisting disability to have been generated contemporaneously with the disability's onset. In fact, and to the contrary, *Dubuc* defined "medically documented" to include any support for a preexisting disability that is "authoritative in the medical field," without reference to a temporal limitation. 659 S.W.3d at 604 (emphasis omitted). The Court then concluded that Dubuc's "own statements about his hernias, albeit recorded by doctors in medical records, do not conclusively support that **any doctor has medically documented**" the claimant's preexisting condition, supporting the conclusion that medical documentation of a preexisting disability could come from "any doctor" so long as the support relied on by the doctor is authoritative in the medical field. *Id.* (emphasis added).

[10]Neither party has addressed whether Exhibit 7, the Division of Workers' Compensation Stipulation for Compromise Settlement dated November 9, 1989, qualifies as "authoritative medical documentation" of Wetzel's preexisting low back disability. The stipulation reflected an agreement that Wetzel sustained an accidental injury arising out of and in the course of his employment on January 20, 1989, which resulted in a disability of 17 1/2 percent of the body as a whole referable to the lower back. The Commission found that because Exhibit 7 did not specifically describe the workplace injury and had "no medical records . . . attached," Exhibit 7 "did not imply . . . that the

18

preexisting disability that was contested by the Second Injury Fund, we conclude that Wetzel sustained his burden to establish that he suffers from a qualifying preexisting disability as required by section 287.220.3(2)(a)a, and thus sustained his burden to establish the first of two conditions required to find the Second Injury Fund liable for PTD. As we have already explained, it is uncontested that *if* Wetzel met his burden to establish the first condition (that the low back disability he suffered in 1989 was a *qualifying* preexisting disability), then substantial and competent evidence on the record as a whole established the second condition (that Wetzel suffered PTD as a result of the combination of his primary workplace injury with the qualifying preexisting disability to his low back). Section 287.220.3(2)(a)b. Wetzel is permanently and totally disabled and the Second Injury Fund is liable for all benefits resulting from the PTD.

Wetzel's point on appeal is granted.

---

employee's . . . 1989 work injury was a qualified *medically documented* preexisting disability as required by [section] 287.220.3(2)(a)a."

This finding has not been challenged on appeal. We therefore express no opinion as to whether a stipulation like Exhibit 7 would qualify as authoritative medical documentation of a preexisting disability. At a minimum, however, Exhibit 7 provided independent corroboration of Wetzel's subsequent self-reports of a 1989 workplace injury that resulted in a preexisting low back injury. Exhibit 7 also independently established that the disability to Wetzel's low back after the 1989 work injury satisfied the fifty-week requirement for a qualifying preexisting disability, and that the preexisting disability fell into one of the four criteria described in section 287.220.3(2)(a)a(i)-(iv), as it was "[a] direct result of a compensable injury as defined in section 287.020." Section 287.220.3(2)(a)a(ii).

19

## Conclusion

The Commission's Final Award is reversed.  This matter is remanded to the Commission with instructions to enter a final award of PTD benefits in favor of Wetzel and against the Second Injury Fund.

_____
Cynthia L. Martin, Judge

All concur